**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KRISTOF DUDAS, derivatively on behalf of SUNPOWER CORPORATION, | C.A. _____ |
| Plaintiff, | |
| v. | **DEMAND FOR JURY TRIAL** |
| PETER FARICY, NATHANIEL ANSCHUETZ, JONATHAN BRAM, JONATHAN FIELDSEND, VINAYAK HEGDE, AUDREY ZIBELMAN, STEVEN LOUDEN, NATHALIE PORTES-LAVILLE, VINCENT STOQUART, GUTHRIE DUNDAS, ELIZABETH EBY, and THOMAS MCDANIEL, | |
| Defendants, | |
| and | |
| SUNPOWER CORPORATION, | |
| Nominal Defendant. | |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiff Kristof Dudas ("Plaintiff"), by and through his undersigned attorneys, derivatively and on behalf of Nominal Defendant SunPower Corporation ("SunPower" or the "Company"), files this Verified Shareholder Derivative Complaint against Defendants Peter Faricy ("Faricy"), Nathaniel Anschuetz ("Anschuetz"), Jonathan Bram ("Bram"), Jonathan Fieldsend ("Fieldsend"), Vinayak Hegde ("Hegde"), Audrey Zibelman ("Zibelman"), Steven Louden ("Louden"), Nathalie Portes-Laville ("Portes-Laville"), Vincent Stoquart ("Stoquart"), Guthrie Dundas ("Dundas"), Elizabeth Eby ("Eby") and Thomas McDaniel ("McDaniel") (collectively, the "Individual

1

Defendants" and together with SunPower, "Defendants"), for and among other things, breaching their fiduciary duties and violations of the federal securities laws.

Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, United States Securities and Exchange Commission ("SEC") filings, press releases published by and regarding SunPower, legal filings, news reports, securities analysts' reports about the Company, and other publicly available information.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought against certain SunPower officers and current and former members of its Board of Directors (the "Board") for breaches of their fiduciary duties between at least March 9, 2023 and October 24, 2023 (the "Relevant Period") and violations of federal securities laws, including through the issuance of materially false and misleading statements.

2.      SunPower is incorporated under the laws of Delaware and its principal executive offices are located in Richmond, California. The Company provides photovoltaic ("PV") solar energy generation systems and battery energy storage products, primarily for residential customers. PV solar energy systems convert light into electricity through the use of solar panels and other semiconducting materials.

3.      On March 10, 2023, the Company filed a Form 10-K, which was signed on March 9, 2023, with the SEC for the period and full-year ended January 1, 2023 (the "2022 10-K"). Therein, the Company reported that its revenue had increased by 53% during the fiscal year 2022 due to organic growth from residential businesses. Additionally, the Company stated that its Audit

2

Committee and management had evaluated the Company's internal controls over financial reporting and deemed it effective.

4.     The truth began to emerge on July 26, 2023, when SunPower issued a press release announcing its preliminary second quarter 2023 results that adjusted earnings guidance for the year ("July 26 Press Release"). The press release revealed that SunPower reduced: 2023 guidance for GAAP net loss to ($90) million-($70) million, customer demand to 70,000 – 90,000, residential Adjusted EBITDA per customer to $1,450 - $1,650, and Adjusted EBITDA to $55 million-$75 million.

5.     On this news, SunPower's share price fell $1.77 per share, or 18.5%, from $11.22 per share on July 25, 2023 to $9.45 per share on July 26, 2023.

6.     On August 2, 2023, SunPower filed a Form 10-Q with the SEC for the quarter ended July 2, 2023 (the "2Q23 10-Q"). SunPower reported a 25% change in total costs of revenue and reported its total inventory of microinverters.

7.     Finally, on October 24, 2023, after the market closed, SunPower filed a Form 8-K with the SEC (the "October 24 8-K"), disclosing a material weakness in its internal controls and the impending restatement of certain financial statements. The October 24 8-K disclosed that investors should no longer rely upon the audited financial statements included in the 2022 10-K, the unaudited financial statements included in the Company's Form 10-Q for the period ended April 2, 2023 (the "1Q23 10-Q"), the unaudited financial statements included in the 2Q23 10-Q, and any communications describing or based upon those financial statements. The Company added that it planned to restate the 2022 10-K, the 1Q23 10-Q, and the 2Q23 10-Q. SunPower stated that it had overstated the value of consignment inventory of certain microinverter components, causing it to understate the associated cost of revenue. The October 24 8-K further revealed that

SunPower's management concluded that a material weakness existed in the Company's internal controls over financial reporting.

8.      On this news, SunPower's share price fell $0.90 per share, or 18.1%, to close at $4.06 per share on October 25, 2023.

9.      Throughout the Relevant Period, the Individual Defendants made materially false and/or misleading statements and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the Individual Defendants misled investors by: (i) failing to disclose that SunPower had material weaknesses in its internal controls over financial reporting; (ii) due to these material weakness in its internal control over financial reporting, SunPower inaccurately reported cost of revenue and inventory metrics; and (iii) as a result of the foregoing, SunPower was reasonably likely to incur significant charges to restate prior reporting.

10.     Additionally, during the Relevant Period, the Individual Defendants caused SunPower to repurchase its stock at artificially inflated prices. During the Relevant Period, SunPower repurchased about 478,345 shares for about $6.36 million. The stock, however, was only worth $4.06 per share and thus, the Company overpaid by about $4.41 million.

11.     As a result of the foregoing, SunPower, Faricy, Dundas, and Eby were named as defendants in the two federal securities class action lawsuits pending in the United States District Court for the Northern District of California, captioned: (1) *Craven v. SunPower Corporation, et al*, Case No. 3:23-cv-05544 (N.D. Cal.); and (2) *Simpson v. SunPower Corporation, et al*, Case No. 3:23-cv-06302 (N.D. Cal.) (collectively, the "Securities Class Actions"). The Securities Class Actions have further subjected SunPower to the need to undertake internal investigations and the need to implement adequate internal controls.   As a result, SunPower will have to expend significant sums of money.

4

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 10(b), 14(a), 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78n(a)(1), 78t(a) and 78t-1), SEC Rules 10b-5 (17 C.F.R. § 240.10b-5) and 14a-9 (17 C.F.R.§240.14a-9)  promulgated thereunder, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), and raise a federal question pertaining to the claims made in the Securities Class Actions based on violations of the Exchange Act.

13.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

14.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

15.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

16.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because the Company is incorporated in this District, a substantial portion of the transactions and wrongs complained of herein occurred in this District, Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

17.     Plaintiff is, and has been at all relevant times, a shareholder of SunPower.

18.     Nominal Defendant SunPower is incorporated under the laws of Delaware with its principal executive offices in Richmond, California. SunPower's common stock trades on the NASDAQ under the ticker symbol "SPWR."

19.     Defendant Faricy has served as SunPower's Chief Executive Officer ("CEO") and as a Company director since 2021. In 2022, Faricy received $5,512,596 in total compensation from the Company. Faricy is named as a defendant in the Securities Class Actions.

20.     Defendant Anschuetz has served as a Company director since 2022 and is a member of the Company's Nominating and Corporate Governance Committee (the "Nominating Committee").

21.     Defendant Bram has served as a Company director since 2022 and is a member of the Company's Compensation Committee.

22.     Defendant Fieldsend has served as a Company director since 2022 and is a member of the Company's Nominating Committee.

23.     Defendant Hegde has served as a Company director since 2022 and is a member of the Company's Audit Committee as well as serving as Chairperson of the Compensation Committee. In 2022, Defendant Hegde received $300,038 in total compensation from the Company.

24.     Defendant Zibelman has served as a Company director since 2023 and is a member of both the Company's Nominating Committee and Audit Committee.

25.     Defendant Louden has served as a Company director since 2023 and serves as the Lead Independent Director, the Chair of the Audit Committee, and as a member of both the Compensation Committee and the Nominating Committee.

26.     Defendant Portes-Laville has served as a Company director since 2021.

27.     Defendant Stoquart has served as a Company director since 2022 and is a member of the Company's Compensation Committee.

28.     Defendant Dundas served as the Company's Interim Chief Financial Officer

("CFO") from August 29, 2022 to May 29, 2023. In 2022, Defendant Dundas received $751,107 in total compensation from the Company. Defendant Dundas is named as a defendant in the Securities Class Actions.

29.     Defendant Eby has served as the CFO of the Company since May 30, 2023 and has performed the functions of the Company's principal accounting officer since October 15, 2023. Defendant Eby is named as a Defendant in the Securities Class Actions.

30.     Defendant McDaniel served as a Company director from 2009 until he retired in July 2023. During his time on the Board, Defendant McDaniel served as the Chairperson of the Audit Committee and a member of the Compensation Committee and the Nominating Committee.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

31.     By reason of their positions as officers and/or directors of SunPower, and because of their ability to control the business and corporate affairs of SunPower, the Individual Defendants owed SunPower and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage SunPower in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of SunPower and its shareholders so as to benefit all shareholders equally.

32.     Each director and officer of the Company owes to SunPower and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

33.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of SunPower, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

34.     To discharge their duties, the officers and directors of SunPower were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

35.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of SunPower, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

36.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

37.     To discharge their duties, the officers and directors of SunPower were required to

exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of SunPower were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to SunPower's own Code of Business Conduct and Ethics (the "Code of Conduct");

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how SunPower conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of SunPower and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that SunPower's operations would comply with all applicable laws and SunPower's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the

Company was required by law to disseminate;

       (g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

       (h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

38.     Each of the Individual Defendants further owed to SunPower and the shareholders the duty of loyalty requiring that each favor SunPower's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

39.     At all times relevant hereto, the Individual Defendants were the agents of each other and of SunPower and were at all times acting within the course and scope of such agency.

40.     Because of their advisory, executive, managerial, and directorial positions with SunPower, each of the Individual Defendants had access to adverse, non-public information about the Company.

41.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by SunPower.

42.     The Individual Defendants, because of their positions with SunPower, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants was provided with copies of the Company's reports,

presentations, and press releases alleged herein to be misleading prior to, or shortly after, their

issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.

Because of their positions and access to material non-public information available to them, each

of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to,

and were being concealed from, the public, and that the positive representations which were being

made were then materially false and/or misleading.

## THE CODE OF CONDUCT

43.     SunPower maintains a Code of Conduct that states that it applies to "[a]ll people

representing SunPower, including employees, contractors, officers and directors of the company."

44.     The Code of Conduct further states that SunPower's "incentive plans and programs

require compliance with the law and this code as a condition of participation and receiving an

award."

45.     Regarding the responsibility to maintain accurate financial records, the Code of

Conduct contains a section titled "Maintaining Accurate Records" that states, in pertinent part:

> As a publicly traded company, SunPower has an obligation to maintain accurate
> business and financial records. Each one of us has an obligation to ensure the
> records we generate are accurate. Never misstate facts, omit critical information or
> modify records or reports in any way to mislead others, and never assist others in
> doing so. All financial transactions must be correctly and timely recorded in
> compliance with SunPower's internal controls and procedures. No unrecorded
> funds or assets may be created or maintained for any purpose. Creating false or
> misleading records is strictly prohibited and may violate a number of laws,
> including the Sarbanes-Oxley act, which may trigger both financial and criminal
> liability for the employee and/or SunPower.

46.     The Code of Conduct also contains a section titled "Consequences for Violating the

Code," which states that:

> Violating any law or this Code is a serious matter. If SunPower determines that an
> employee has violated the law or this Code, that individual will be subject to
> disciplinary action, including possible termination of employment, loss of

employment-related benefits, and, if applicable, criminal or civil proceedings. Our incentive plans and programs require compliance with the law and this Code as a condition of participation and receiving an award. An employee who violates the law within the scope of his or her employment, or who commits a serious violation of this Code, may not be entitled to incentive compensation, including annual or semi-annual cash bonuses, restricted stock units, or other awards, unless prohibited by law.

## THE AUDIT COMMITTEE CHARTER

47.     SunPower maintains an Audit Committee Charter, the stated purpose of which is to "provide oversight of the Company's accounting and financial reporting processes" and *inter alia* "assist the Board in the oversight of [ ] the integrity of the Company's financial statements [and] the Company's compliance with legal and regulatory requirements."

48.     Pursuant to the Audit Committee Charter, the Audit Committee has, *inter alia*, the responsibility to:

> review (i) major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles or practices as suggested by management or the independent auditor; (ii) major issues as to the adequacy of the Company's internal controls and any special compensating procedures or audit steps adopted in light of material control deficiencies and material weaknesses in the Company's internal control over financial reporting; (iii) analyses prepared by management and/or the independent auditor setting forth significant financial reporting issues and judgments made in connection with preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements; (iv) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements; and (v) an annual report furnished by Company management identifying key risks to the Company's worldwide business;

> discuss with management and the independent auditor the Company's annual audited financial statements and quarterly unaudited financial statements and review the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations" prior to filing the Company's annual report on Form 10-K and quarterly reports on Form 10-Q, respectively, with the SEC and, with respect to the annual financial statements, the appropriateness and quality of accounting and auditing principles and practices, including any "critical audit matters" (as that term is defined in PCAOB AS 3101), as well as the adequacy of internal controls that could significantly affect the Company's financial statements;

discuss with management and the independent auditor the Company's earnings press releases (paying particular attention to the use of any "pro forma" or "adjusted" non-GAAP information), the type and presentation of information included in the Company's earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies…

report regularly to the Board a summary of matters addressed at Committee meetings, any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements…

review the independent financial statement and internal control audit by: (i) reviewing the independent auditor's proposed audit scope and approach; (ii) discussing with the Company's independent auditor the financial statements, the Company's internal control over financial reporting and the audit findings, including any significant adjustments, management judgments and accounting estimates, significant new accounting policies and disagreements with management, any deficiencies, significant deficiencies or material weaknesses and any other matters described in PCAOB Auditing Standard No. 16 or required by the applicable SEC and NASDAQ Rules; and (iii) reviewing reports submitted to the Committee by the independent auditor in accordance with applicable SEC Rules;

review before release the unaudited quarterly operating results in the Company's quarterly earnings release;

recommend to the Board whether to include the annual audited financial statements in the Company's annual report on Form 10-K;

review and discuss with the Chief Executive Officer, Chief Financial Officer and the independent auditor (i) the adequacy and effectiveness of the Company's internal controls over financial reporting including any significant deficiencies, material weaknesses and significant changes in internal controls which are reasonably likely to affect the Company's ability to record, process, summarize and report financial information or were reported to the Committee by management and any fraud involving management or other employees who have a significant role in the Company's internal controls, (ii) the results of the internal control audit by the independent auditor, (iii) any special audit steps adopted in light of any material control deficiencies and (iv) the effectiveness of the Company's disclosure controls and procedures.

49.     With respect to regulatory compliance, the Audit Committee Charter states that

the Committee "shall" "oversee compliance with the Company's Code of Business Conduct and

Ethics" and "review the Company's compliance with laws and regulations, including major legal

and regulatory initiatives, and any major litigation or investigations against the Company that may have a material impact on the Company's financial statements…"

50.     With respect to risk oversight, the Audit Committee Charter states that the Committee "shall…provide assistance to the Board in overseeing, and provide guidance to management on, the identification, evaluation and mitigation of major strategic, operational, regulatory, accounting and financial reporting, informational and external risks inherent in the Company's business worldwide…"

## SUBSTANTIVE ALLEGATIONS

### False and Misleading Statements Issued During the Relevant Period

*2022 10-K*

51.     On March 10, 2023, SunPower filed the 2022 10-K with the SEC. Attached to the 2022 10-K were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Faricy and Dundas attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to SunPower's internal controls, and the disclosure of any fraud committed by SunPower, its officers, or its directors. Defendants Faricy, Anschuetz, Bram, Fieldsend, Hegde, Portes-Laville, Stoquart, and McDaniel signed, or authorized their signature on, the 2022 10-K on March 9, 2023.

52.     The 2022 10-K discussed the cost of revenues, reporting and stating in part:

| Fiscal Year Ended | | | | | |
|---|---|---|---|---|---|
| (In thousands, except percentages) | January 1, 2023 | % Change | January 2, 2022 | % Change | January 3, 2021 |
| **Cost of Revenues** | | | | | |
| Total cost of revenues | $1,377,169 | 53% | $902,718 | 23% | $733,371 |
| | | | | | |
| **Gross Margin** | | | | | |
| Total gross margin | 21% | | 20% | | 16% |

14

Our total cost of revenues increased by 53% during fiscal 2022 as compared to fiscal 2021, as a result of organic revenue growth from our residential businesses across all channels and the Blue Raven acquisition in the fourth quarter of 2021, as well as increasing material, freight, and labor costs due to inflationary pressures. This was partially offset by a decrease in cost of revenues as a result of the wind- down of our Light Commercial business beginning in the first quarter of fiscal 2022.

53.     Regarding the Company's inventories, the 2022 10-K reported the following, in pertinent part:

**Inventories**

| (In thousands) | As of | |
| --- | --- | --- |
| | January 1, 2023 | January 2, 2022 |
| Photo-voltaic modules | $156,292 | $130,671 |
| Microinverters | 46,088 | 24,040 |
| Energy Storage | 63,327 | 26,849 |
| Other solar power system component materials | 51,108 | 32,872 |
| Inventories₁ | $316,815 | $214,432 |

₁ Photovoltaic modules are classified as finished goods, while the remaining components of total inventories are classified as raw materials.

54.     The 2022 10-K contained a report that stated that Company management had "conducted an evaluation of the effectiveness of our internal control over financial reporting using the criteria described in [the] Internal Control-Integrated Framework." According to the report, Company management "concluded that [SunPower's] internal control over financial reporting was effective as of January 1, 2023 based on the criteria described in Internal Control-Integrated Framework." The report further stated that Company management had reviewed said results with the Audit Committee.

55.     The 2022 10-K was materially false and/or misleading and failed to disclose

material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) due to a material weakness in its internal control over financial reporting, the Company had inaccurately reported cost of revenue and inventory metrics; (2) as a result of the foregoing, the Company was reasonably likely to incur significant charges to restate prior reporting; and (3) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### *2023 Proxy Statement*

56.     On March 31, 2023, the Company filed its annual proxy statement ("2023 Proxy Statement") with the SEC on Schedule 14(a). The 2023 Proxy Statement solicited shareholder votes in favor several proposals including: (1) the re-election of Defendants Faricy, Anschuetz, and McDaniel to the Board; and (2) non-binding approval of the compensation paid to SunPower's named executive officers.

57.     Regarding the Company's Code of Conduct, the 2023 Proxy Statement stated that the Code of Conduct "is applicable to our directors, officers, and employees . . . as well as to our suppliers, vendors, partners, and other parties that represent us, and is designed to promote compliance with the laws applicable to our business, accounting standards, and proper and ethical business methods and practices."

58.     The 2023 Proxy Statement also contained an Audit Committee Report that stated that the Audit Committee is required to "provide oversight of our accounting and financial reporting processes"; "assist the Board in the oversight of [ ] the integrity of our financial statements [ ] and [ ] the performance of our internal audit function"; and "oversee management's identification, evaluation, and mitigation of major risks to our company."

59.     The 2023 Proxy Statement also contained the following statement regarding the Board's responsibility for overseeing risks to the Company:

> The Board is actively involved in oversight of risks that could affect our company. This oversight is conducted primarily through committees of the Board, in particular our Audit Committee, as disclosed in the descriptions of each of the committees below and in the respective charters of each committee. The full Board, however, has retained responsibility for general oversight of risks. The Board satisfies this responsibility through full reports by each committee chair regarding the committee's considerations and actions, as well as through regular reports directly from our officers responsible for oversight of particular risks within our company.

60.     The 2023 Proxy Statement was materially false and misleading and failed to disclose material facts necessary to make the statements made not false and misleading. Specifically, the 2023 Proxy Statement and the Individual Defendants failed to disclose that: (1) contrary to the 2023 Proxy Statement's descriptions of the Board's and its committees' risk oversight functions, the Board and its committees were not adequately exercising these functions and were causing or permitting the Company to issue false and misleading statements about it; (2) although the Individual Defendants purported to furnish stock grants to executives based upon the performance of the Company, the Company's common stock was artificially-inflated as a result of the false and misleading statements; (3) material weaknesses in internal controls resulted in the Company inaccurately reporting revenue and inventory; (4) because of the inaccurate reporting, SunPower was reasonably likely to incur significant charges to restate its previously-reported financial statements; and (5) the Company failed to maintain internal controls. As a result of the foregoing, Defendants' statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis at all relevant times.

*1Q23 10-Q*

61.     On May 3, 2023, SunPower filed the 1Q23 10-Q with the SEC, which Dundas

signed. Attached to the 1Q23 10-Q were signed SOX certifications by Defendants Faricy and Dundas that attested to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

62.     The 1Q23 10-Q reported the following regarding cost of revenues:

**Total Cost of Revenues and Gross Margin**

| | Three Months Ended | | |
|---|---|---|---|
| (In thousands, except percentages) | April 2, 2023 | April 3, 2022 | % Change |
| **Cost of Revenues** | | | |
| Total cost of revenues | $376,767 | $277,968 | 36% |
| | | | |
| **Gross Margin** | | | |
| Total gross margin | 15% | 21% | (6)% |

63.     Regarding inventories, the 1Q23 10-Q reported the following:

**Inventories**

| | As of | |
|---|---|---|
| (In thousands) | April 2, 2023 | January 1, 2023 |
| Photo-voltaic modules | $206,083 | $156,292 |
| Microinverters | 65,388 | 46,088 |
| Energy Storage Systems | 59,996 | 63,327 |
| Other solar power system component materials | 50,380 | 51,108 |
| Inventories[1] | $381,847 | $316,815 |

[1] Photovoltaic modules are classified as finished goods, while the remaining components of total inventories are classified as raw materials.

64.     The 1Q23 10-Q was materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically,

Defendants failed to disclose to investors that: (1) due to a material weakness in its internal control over financial reporting, the Company had inaccurately reported cost of revenue and inventory metrics; (2) as a result of the foregoing, the Company was reasonably likely to incur significant charges to restate prior reporting; and (3) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## The Truth Begins To Emerge

65.     On July 26, 2023, SunPower filed a Form 8-K with the SEC. Attached to the Form 8-K was the July 26 Press Release. The July 26 Press Release announced that SunPower was revising its guidance for 2023.

66.     The July 26 Press Release contained a statement from Defendant Faricy:

> Demand in the second quarter has weakened more than expected in the Southeast and Southwest where macroeconomic uncertainty and higher interest rates have slowed our top-of-funnel lead generation and sales bookings…To quickly adapt to prevailing market conditions and help ensure SunPower maintains its competitive edge, we are reducing our cost structure. Although we've seen improvements in sales growth in June and July, we've made the decision to reduce our labor costs and are taking additional measures to improve operational efficiency across the board. We believe that these actions will position the company for success as market conditions improve.

67.     The July 26 Press Release further discussed the Company's revised guidance for 2023, stating in part:

> The company reduced 2023 guidance for GAAP net loss to ($90) million-($70) million.

> To accurately reflect its assessment of current and near-future customer demand as well as its mitigating actions to reduce cost structure, the company has reduced its 2023 customer guidance to 70,000–90,000 incremental customers, noting that more than 70% of the projected installations in the second half of 2023 are already accounted for through the execution of existing backlog. This includes the expected recognition of all California NEM 2.0 backlog by year-end and stronger than expected New Homes bookings.

Guidance for Adjusted EBITDA per customer before platform investment was reduced to $1,450-$1,650 to reflect installation costs that are higher than anticipated, as well as the effects of lower market pricing and higher levels of inventory carried this year following the supply chain disruptions of 2022.

The company also expects to reduce Platform Investment to $50 million-$70 million for the year.

Guidance for Adjusted EBITDA for the year was reduced to $55 million-$75 million.

68.     On this news, SunPower's share price fell $1.77 per share, or 18.5%, from $11.22 per share on July 25, 2023 to $9.45 per share on July 26, 2023.

*2Q23 10-Q*

69.     On August 2, 2023, SunPower filed the Q2 2023 10-Q with the SEC, which Defendant Eby signed. Attached to the 2Q23 10-Q were signed SOX certifications by Defendants Faricy and Eby that attested to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

70.     The 2Q23 10-Q reported the following regarding costs of revenues:

**Total Cost of Revenues and Gross Margin**

| (In thousands, except percentages) | Three Months Ended | | | Six Months Ended | | |
|---|---|---|---|---|---|---|
| | July 2, 2023 | July 3, 2022 | % Change | July 2, 2023 | July 3, 2022 | % Change |
| **Cost of Revenues** | | | | | | |
| Total cost of revenues | $ 399,724 | $336,273 | 19% | $769,667 | $614,241 | 25% |
| | | | | | | |
| **Gross Margin** | | | | | | |
| Total gross margin | 14 % | 2% | (6)% | 15% | 20% | (5)% |

71.     Regarding inventory, SunPower reported the following in the 2Q23 10-Q:

**Inventories**

| (In thousands) | As of | |
| --- | --- | --- |
| | **July 2, 2023** | **January 1, 2023** |
| Photovoltaic modules | $244,068 | $156,292 |
| Microinverters | 68,832 | 46,088 |
| Energy storage systems | 58,670 | 63,327 |
| Other solar power system component materials | 52,470 | 51,108 |
| Inventories[1] | $424,040 | $316,815 |

[1] Photovoltaic modules are classified as finished goods, while the remaining components of total inventories are classified as raw materials.

72.     The 2Q23 10-Q was materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) due to a material weakness in its internal control over financial reporting, the Company had inaccurately reported cost of revenue and inventory metrics; (2) as a result of the foregoing, the Company was reasonably likely to incur significant charges to restate prior reporting; and (3) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

73.     The Individual Defendants knew that each of the public documents and statements identified above and issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. The Individual Defendants, by virtue of their receipt of information reflecting the true facts

21

regarding SunPower's financials, their control over, and/or receipt and/or modification of the Company's materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning SunPower's operations, participated in the fraudulent scheme alleged herein.

**The Truth Fully Emerges**

74.    On October 24, 2023, SunPower filed the October 24Form 8-K with the SEC announcing that its previous financial statements could not be relied upon as certain financial statements would need to be restated. The October 24 8-K stated:

> On October 19, 2023, the Audit Committee (the "Audit Committee") of the Board of Directors (the "Board") of SunPower Corporation (the "Company"), based upon the recommendation of management, determined that the Company's (i) audited financial statements included in the Company's Annual Report on Form 10-K for the period ended January 1, 2023, filed with the U.S. Securities and Exchange Commission (the "SEC") on March 10, 2023 (the "Form 10-K"), (ii) unaudited financial statements included in the Company's Quarterly Report on Form 10-Q for the quarterly period ended April 2, 2023, filed with the SEC on May 3, 2023 (the "Q1 2023 Form 10-Q"), and (iii) unaudited financial statements included in the Company's Quarterly Report on Form 10-Q for the quarterly period ended July 2, 2023, filed with the SEC on August 2, 2023 (the "Q2 2023 Form 10-Q," and collectively, the "Affected Periods"), as well as the relevant portions of any communication which describe or are based on such financial statements, should no longer be relied upon. The Company plans to restate, as soon as practicable, the financial statements for the Affected Periods in amendments to the Form 10-K, the Q1 2023 Form 10-Q, and the Q2 2023 Form 10-Q, respectively (collectively, the "Restatement").

> In connection with the preparation of the financial statements, the Company preliminarily determined that the value of consignment inventory of microinverter components at certain third-party locations had been overstated in the Affected Periods in the range of approximately $16 million to $20 million, resulting in the associated cost of revenue being understated. At this time, the Company has not fully completed its review, and the expected financial impact of the errors described above is preliminary and subject to change. Additionally, the Company is correcting other immaterial errors in the Affected Periods.

> Upon evaluation of the impact to Affected Periods, the Company's management has concluded that in light of the matters described above, a material weakness exists in the Company's internal control over financial reporting. The Company's

remediation plan with respect to such material weakness will be described in more detail in the Company's amended Form 10-K.

The Company's management also has concluded that the Company's disclosure controls and procedures and internal control over financial reporting were not effective as of January 1, 2023 and the Company's disclosure controls and procedures were not effective as of April 2, 2023 and July 2, 2023. In addition, as a result of the material weakness, Ernst & Young LLP, the Company's independent registered public accounting firm for the year ended January 1, 2023 ("EY"), has determined that its report on internal control over financial reporting as of January 1, 2023, dated March 9, 2023 and included in the Company's Annual Report on Form 10-K for the year ended January 1, 2023 filed with the SEC on March 10, 2023, will be revised to an adverse opinion that internal control over financial reporting was ineffective and reissued.

75.     On this news, SunPower's share price fell $0.90 per share, or 18.1%, to close at $4.06 per share on October 25, 2023, on unusually high trading volume.

## REPURCHASES THROUGHOUT THE RELEVANT PERIOD

76.     During the Relevant Period, the Individual Defendants caused SunPower to repurchase its common stock. In total, SunPower spent an aggregate amount of over $6.36 million to repurchase 478,345 shares of its own common stock at artificially-inflated prices from March 2023 through August 2023, thereby damaging the Company.

77.     The 1Q23 10-Q states that between February 27, 2023[1] and April 2, 2023, the Company purchased 290,752 shares of its common stock for approximately $4,451,413.12 at an average price of $15.31 per share. SunPower's stock, however, was only worth $4.06 per share (the price it closed at the end of the Relevant Period on October 25, 2023). Accordingly, SunPower overpaid by about $3,270,960 to repurchase its own stock during this time period.

78.     The 2Q23 10-Q states that between April 3, 2023 and April 30, 2023, SunPower purchased 26,712 shares of its common stock for approximately $351,529.92 at an average price of $13.16 per share. SunPower's stock, however, was only worth $4.06 per share (the price it

---

[1] Shares are assumed to have been purchased during the Relevant Period.

closed at the end of the Relevant Period on October 25, 2023). Accordingly, SunPower overpaid by about $243,079.20 to repurchase its own stock during this time period.

79.     The 2Q23 10-Q states that between May 1, 2023 and May 28, 2023, SunPower purchased 18,641 shares of its common stock for approximately $210,456.89 at an average price of $11.29 per share. SunPower's stock, however, was only worth $4.06 per share (the price it closed at the end of the Relevant Period on October 25, 2023). Accordingly, SunPower overpaid by about $243,079.20 to repurchase its own stock during this time period.

80.     The 2Q23 10-Q also stated that between May 29, 2023 and July 2, 2023, SunPower purchased 81,479 shares of its common stock for approximately $873,454.88 at an average price of $10.72 per share. SunPower's stock, however, was only worth $4.06 per share (the price it closed at the end of the Relevant Period on October 25, 2023). Accordingly, SunPower overpaid by about $542,650.14 to repurchase its own stock during this time period.

81.     According to SunPower's Form 10-Q filed with the SEC on December 18, 2023 (the "3Q23 10-Q"), between July 3, 2023 and July 30, 2023. SunPower purchased 8,821 shares of its common stock for approximately $85,387.28 at an average price of $9.68 per share. SunPower's stock, however, was only worth $4.06 per share (the price it closed at the end of the Relevant Period on October 25, 2023). Accordingly, SunPower overpaid by about $49,574 to repurchase its own stock during this time period.

82.     The 3Q23 10-Q also stated that between July 31, 2023 and August 27, 2023, the Company purchased 10,595 shares of its common stock for approximately $91,858.65 at an average price of $8.67 per share. SunPower's stock, however, was only worth $4.06 per share (the price it closed at the end of the Relevant Period on October 25, 2023). Accordingly, SunPower overpaid by about $48,842.95 to repurchase its own stock during this time period.

83.     The 3Q23 10-Q also stated that between August 28, 2023 and October 1, 2023, the Company purchased 41,345 shares of its common stock for approximately $296,030.20 at an average price of $7.16 per share. SunPower's stock, however, was only worth $4.06 per share (the price it closed at the end of the Relevant Period on October 25, 2023). Accordingly, SunPower overpaid by about $128,169.50 to repurchase its own stock during this time period.

84.     As the Individual Defendants made and/or caused SunPower's stock price to be artificially inflated, SunPower paid on average $6.40 more than the actual worth of each share during the Relevant Period. Accordingly, SunPower overpaid for its own stock by about $4.41 million during the Relevant Period.

## DAMAGES TO SUNPOWER

85.     As a direct and proximate result of the Individual Defendants' misconduct outlined herein, SunPower has lost and expended, and will continue to lose and expend, millions of dollars.

86.     Such expenditures include, but are not limited to: (1) legal fees associated with the Securities Class Actions, including attorneys', accountants', experts', and investigators' fees; (ii) costs to implement measures to remedy the material weaknesses in SunPower's internal controls over financial reporting; and (iii) substantial compensation and benefits paid to the Individual Defendants, who breached their fiduciary duties to the Company.

87.     Additionally, SunPower was harmed by overpaying by approximately $4.41 million for repurchases of its stock during the Relevant Period as the Company's stock was artificially inflated.

88.     As a direct and proximate result of the Individual Defendants' misconduct and breaches of fiduciary duties, SunPower has suffered and will continue to suffer a loss of reputation

and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's actions and misrepresentations.

### PLAINTIFF'S DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

89.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the Individual Defendants' breaches of their fiduciary duties as controlling shareholders, directors and/or officers of SunPower.

90.     SunPower is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

91.     Plaintiff will adequately and fairly represent the interests of SunPower and its stockholders in enforcing and prosecuting its rights.

92.     Plaintiff is a current shareholder of SunPower and has been a continuous holder of the Company's common shares at all relevant times.

93.     A pre-suit demand on the Board is futile and, therefore, excused. At the time this action was commenced, the Board was comprised of Defendants Faricy, Anschuetz, Bram, Fieldsend, Hegde, Zibelman, Louden, Portes-Laville, and Stoquart (collectively, the "Director Defendants"). Accordingly, Plaintiff is only required to show that five members of the current Board cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all of the Board's current directors are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

94.     According to the Company's 2023 Proxy Statement, SunPower concedes that Defendant Faricy, Anschuetz, Bram, Fieldsend, Portes-Laville, and Stoquart – *i.e.*, six of the current nine members of the Demand Board – are not independent.

95.     Moreover, Defendants Faricy, Anschuetz, Bram, Fieldsend, Hegde, Louden, Portes-Laville, and Stoquart solicited the 2023 Proxy Statement to call for a shareholder vote to, *inter alia*, reelect Defendants Faricy, Anschuetz, and McDaniel to the Board, thus allowing them to continue breaching their fiduciary duties to SunPower. Thus, demand is futile and excused as to them.

96.     Additional reasons that demand on Defendant Faricy is futile follow. Defendant Faricy has served as the CEO, President, and Chairperson of the Board since 2021. Thus, as the Company admits, he is a non-independent director. The Company also provides Defendant Faricy with his principal occupation for which he is handsomely paid. As CEO, Defendant Faricy is ultimately responsible for all of the false and misleading statements and omissions that were made, including those contained in the following statements: 2022 10-K, 2023 Proxy Statement, 1Q23 10-Q, and 2Q23 10-Q. As the Company's top executive officer and trusted Chairperson of the Board, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Moreover, Defendant Faricy is a defendant in the Securities Class Actions. For these reasons, too, Defendant Faricy breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

97.     Additional reasons that demand on Defendant Anschuetz is futile follow.

27

Defendant Anschuetz has served as a Company director since 2021. As a member of the Board, he serves on the Nominating Committee. As the Company admits, Defendant Anschuetz is not an independent director. Defendant Anschuetz authorized his signature on the 2022 10-K and solicited the 2023 Proxy Statement, both of which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting, and consciously disregarded his duties to protect corporate assets. For these reasons, too, Defendant Anschuetz breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

98.    Additional reasons that demand on Defendant Bram is futile follow. Defendant Bram has served as a Company director since 2022. As a member of the Board, he serves on the Compensation Committee. As the Company admits, Defendant Bram is not independent. Defendant Bram authorized his signature on the 2022 10-K and solicited the 2023 Proxy Statement, both of which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Bram breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus, demand upon him is futile and, therefore, excused.

99.    Additional reasons that demand on Defendant Fieldsend is futile follow. Defendant Fieldsend has served as a member of the Board since 2022. As a member of the Board, he serves on the Nominating Committee. As the Company admits, Defendant Fieldsend is not

independent. Defendant Fieldsend authorized his signature on the 2022 10-K and solicited the 2023 Proxy Statement, both of which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Fieldsend breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus, demand upon him is futile and, therefore, excused.

100.    Additional reasons that demand on Defendant Hegde is futile follow. Defendant Hegde has served as a member of the Board since 2021. As a member of the Board, he serves as the Chairperson of the Compensation Committee and as a member of the Audit Committee. For his service on the Board, Defendant Hegde is entitled to substantial compensation and stock awards. Defendant Hegde authorized his signature on the 2022 10-K and solicited the 2023 Proxy Statement, both of which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement to make false and misleading statements and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Hegde breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested and, thus, demand upon him is futile and, therefore, excused.

101.    Additional reasons that demand on Defendant Zibelman is futile follow. Defendant Zibelman has served as a Company director since May 17, 2023. As a member of the Board, she serves as the Chairperson of the Nominating Committee and as a member of the Audit Committee. For her service on the Board, she will be entitled to substantial compensation and lucrative stock awards. As a trusted Company director, she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements and

consciously disregarded her duties to protect corporate assets. Additionally, as a member of the Audit Committee she was obligated to ensure that the Company's internal controls were functional and that its financial statements were fair and accurate. For these reasons, Defendant Zibelman breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested and, thus, demand upon her is futile and, therefore, excused.

102.     Additional reasons that demand on Defendant Louden is futile follow. Defendant Louden has served as a Company director since March 14, 2023. As a member of the Board, he serves as the Lead Independent Director, the Chairperson of the Audit Committee, and as a member of the Compensation and Nominating Committees. Additionally, as the Chairperson of the Audit Committee, Defendant Louden is ultimately responsible for all of the false and misleading financial statements that the Company published. Defendant Louden was obligated to ensure that the Company's internal controls on financial reporting were effective and failed to do so. As the trusted Lead Independent Director and Chairperson of the Audit Committee, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Louden breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus, demand upon him is futile and, therefore, excused.

103.     Additional reasons that demand on Defendant Portes-Laville is futile follow. Defendant Portes-Laville has served as a Company director since 2021. As the Company admits, Defendant Portes-Laville is not an independent director. Defendant Portes-Laville authorized her signature on the 2022 10-K and solicited the 2023 Proxy Statement, both of which contained false and misleading statements. As a trusted Company director, she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements and

consciously disregarded her duties to protect corporate assets. For these reasons, Defendant Portes-Laville breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested and, thus, demand upon her is futile and, therefore, excused.

104.     Additional reasons that demand on Defendant Stoquart is futile follow. Defendant Stoquart has served as a Company director since 2022. As a member of the Board, he serves on the Compensation Committee. As the Company admits, Defendant Stoquart is not an independent director. Moreover, Defendant Stoquart authorized his signature on the 2022 10-K and solicited the 2023 Proxy Statement, both of which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement to make false and misleading and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Stoquart breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested and, thus, demand upon him is futile and, therefore, excused.

105.     Additional reasons that demand on the Board is futile follow.

106.     Defendants Hegde, Zibelman, and Louden served on the Company's Audit Committee during the Relevant Period. Pursuant to the Company's Audit Committee Charter, Defendants Hegde, Zibelman, and Louden were responsible for overseeing, *inter alia*, the Company's accounting and financial reporting processes, the integrity of the Company's financial statements and reports, and the adequacy of the Company's internal controls over financial reporting. During the Relevant Period, Defendants Hegde, Zibelman, and Louden failed to ensure the integrity of the Company's financial statements and internal controls, as they were charged to do under the Audit Committee Charter, thereby allowing the Company to engage in improper accounting methods and to file false and misleading financial statements with the SEC. Thus,

Defendants Hegde, Zibelman, and Louden breached their fiduciary duties, are not disinterested, and demand is excused as to them.

107.    All of the Director Defendants are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the members of the Demand Board to also adhere to SunPower's of business conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly allowed the Company to violate the law. All of the Director Defendants violated the Code of Conduct, including by refusing to take action to address the misconduct alleged herein. As such, the entire Demand Board faces a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

108.    None of the Director Defendants have taken any remedial action to investigate or redress the Company's losses and exposure due to their and the other Individual Defendants' misconduct.

109.    The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director-Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As all of the Director-Defendants face a substantial likelihood of liability, they cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

110.    The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers'

liability insurance if they caused the Company to purchase it for their protection with corporate funds *i.e.*, monies belonging to the stockholders of SunPower. If there is a directors' and officers' liability insurance policy covering the Director Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of SunPower, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an Insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

111.    If there is no directors' and officers' liability insurance, then the Director Defendants will not cause SunPower to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

112.    Accordingly, a pre-suit demand on the current Board comprised of the Director Defendants is futile and excused.

## CLAIM I

### Against the Individual Defendants for Violations of Section 14(a) of the Exchange Act

113.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

114.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate

commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

115. Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

116. Under the direction and watch of Defendants Faricy, Anschuetz, Bram, Fieldsend, Hegde, Louden, Portes-Laville, Stoquart, and McDaniel, the 2023 Proxy Statement failed to disclose, *inter alia*: (1) contrary to the their descriptions of the Board's risk oversight function and the Audit Committee's responsibilities, the Board and its committees were not adequately exercising these functions, were causing or permitting the Company to issue false and misleading statements, and thus the Defendants on the Board were breaching their fiduciary duties; and (2) the Board members at that time who were breaching their fiduciary duties were improperly interested in increasing their unjust compensation.

117. The 2023 Proxy Statement further failed to disclose that the Company was issuing false and misleading statements in violation of securities laws and had failed to establish or maintain adequate internal controls. As a result, the 2023 Proxy Statement was materially false and misleading.

118. In the exercise of reasonable care, the Individual Defendants should have known

that the statements contained in the 2023 Proxy Statement statements were materially false and misleading.

119.     The misrepresentations and omissions in the 2023 Proxy Statement were material to Company stockholders in voting on the proposals made therein. The misrepresentations and omissions were material to Company stockholders in voting on the matters set forth for stockholder determination in the 2023 Proxy Statement, including but not limited to the reelection of certain Director Defendants and the approval, on an advisory basis, of the compensation of the Company's executives.

120.     The false and misleading elements of the 2023 Proxy Statement led to, among other things, the election Defendants Faricy, Anschuetz, and McDaniel which allowed them to continue to breach their fiduciary duties to SunPower.

121.     The Company was damaged as a result of the defendants' material misrepresentations and omissions in the 2023 Proxy Statement.

122.     No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

## CLAIM II

### Against the Individual Defendants for Violations of Section 10(b) of the Exchange Act and Rule 10b-5

123.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

124.     The Individual Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

125.     The Individual Defendants, individual and in concert, directly or indirectly, disseminated or approved the materially false statements specified above, which they knew or deliberately disregarded to be misleading in that they contained misrepresentations and failed to

disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

126.    The Individual Defendants employed devices, schemes and artifices to defraud while in possession of adverse, material, non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about SunPower not misleading.

127.    The Individual Defendants, as top executives and directors of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as directors and officers of the Company, the Individual Defendants were able to and did control the conduct complained of herein and the content of the public statements disseminated by SunPower.

128.    The Individual Defendants acted with scienter during the Relevant Period, in that they either had actual knowledge of the scheme and the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were the top executives of the Company, or received briefings from them, and were therefore directly responsible for the scheme set forth herein and for the false and misleading statements and omissions disseminated to the public through press releases, conference calls, and filings with the SEC.

129.    As a result of the foregoing, the market price of SunPower common stock was artificially inflated during the relevant time period. In ignorance of the falsity of the statements, Plaintiff relied on the statements described above and/or the integrity of the market price of

SunPower common stock in purchasing SunPower common stock at prices that were artificially inflated as a result of the false and misleading statements and was damaged thereby.

130.     By virtue of the foregoing, the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

131.     Plaintiff on behalf of SunPower has no adequate remedy at law.

## CLAIM III

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

132.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

133.     The Individual Defendants, by virtue of their positions with SunPower and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of SunPower and each of its officers and directors who made the false and misleading statements alleged herein within the meaning of Section 20(a) of the Exchange Act. The Individual Defendants had the power and influence and exercised the same to cause SunPower to engage in the illegal conduct and practices complained of herein.

134.     Plaintiff on behalf of SunPower has no adequate remedy at law.

## CLAIM IV

### Against Defendants Faricy, Dundas, and Eby for Contribution
### Under §§ 10(b) and 21D of the Exchange Act

135.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

136.     The conduct of Defendants Faricy, Dundas and Eby as described herein has exposed the Company to significant liability under various federal securities laws by their misconduct.

137.    SunPower, Faricy, Dundas and Eby are named as defendants in the related Securities Class Actions that allege and assert claims arising under the federal securities laws. SunPower is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein.

138.    If SunPower is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of Defendants Faricy, Dundas and Eby as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. SunPower is entitled to contribution and indemnification from the Individual Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

139.    As officers and directors, Defendants Faricy, Dundas and Eby had the power or ability to, and did, control or influence, either directly or indirectly, SunPower's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

140.    The Individual Defendants are liable under §21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

141.    Defendants Faricy, Dundas and Eby have damaged the Company and are liable to the Company for contribution.

142.    As such, SunPower is entitled to receive all appropriate contribution or indemnification from Defendants Faricy, Dundas and Eby.

## CLAIM V

**Against the Individual Defendants for Breach of Fiduciary Duties**

143.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

144.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of SunPower's business and affairs.

145.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

146.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of SunPower.

147.    In breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

148.    In further breach of their fiduciary duties owed to SunPower, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements and omissions of material fact that failed to disclose, *inter alia*, that: (1) material weaknesses in internal controls resulted in the Company inaccurately reporting revenue and inventory; (2) because of the foregoing, SunPower was reasonably likely to incur significant charges to restate its previously-reported financial statements; and (3) the Company failed to maintain internal controls. As a result of the foregoing, Defendants' statements about the Company's business, operations, and prospects were materially misleading and/or lacked a

reasonable basis at all relevant times.

149.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

150.    The Individual Defendants failed to correct and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

151.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the scheme alleged herein and to prevent it from continuing to occur.

152.    These actions were not a good-faith exercise of prudent business judgment to

protect and promote the Company's corporate interests.

153.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, SunPower has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

154.    Plaintiff on behalf of SunPower has no adequate remedy at law.

## CLAIM VI

### Against the Individual Defendants for Waste of Corporate Assets

155.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

156.    As a further result of the foregoing, the Company will incur many millions of dollars of legal liability and/or costs to defend unlawful actions (as evidenced, for example, by the Securities Class Actions), to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

157.    The Individual Defendants also caused SunPower to repurchase its shares at artificially inflated prices, thereby wasting SunPower's assets.

158.    As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

159.    Plaintiff on behalf of SunPower has no adequate remedy at law.

## CLAIM VII

### Against the Individual Defendants for Unjust Enrichment

160.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

161.    By their wrongful acts, violations of law, and false and misleading statements and

omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, SunPower.

162.    The Individual Defendants either benefitted financially from the improper conduct, received unjustly lucrative bonuses tied to the false and misleading statements, or received bonuses, stock options, or similar compensation from SunPower that was tied to the performance or artificially-inflated valuation of SunPower or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

163.    Plaintiff, as a shareholder and a representative of SunPower, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits—including from insider sales, benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

164.    Plaintiff on behalf of SunPower has no adequate remedy at law.

## CLAIM VIII

### Against the Individual Defendants for Gross Mismanagement

165.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

166.    By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of SunPower in a manner consistent with the operations of a publicly-held corporation.

167.    As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, SunPower has sustained and will continue

to sustain significant damages.

168.     As a result of the misconduct and breaches of duty alleged herein, the Individual

Defendants are liable to the Company.

169.     Plaintiff on behalf of SunPower has no adequate remedy at law.

## CLAIM IX

### Against the Individual Defendants for Abuse of Control

170.     Plaintiff incorporates by reference and realleges each and every allegation set forth

above, as though fully set forth herein.

171.     The Individual Defendants' misconduct alleged herein constituted an abuse of their

ability to control and influence SunPower, for which they are legally responsible.

172.     As a direct and proximate result of the Individual Defendants' abuse of control,

SunPower has sustained significant damages. As a result of the misconduct alleged herein, the

Individual Defendants are liable to the Company.

173.     Plaintiff on behalf of SunPower has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

A.     Awarding money damages against all Individual Defendants, jointly and

severally, for all losses and damages suffered as a result of the acts and transactions complained

of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual

Defendants do not participate therein or benefit thereby;

B.     Directing all Individual Defendants to account for all damages caused by them

and all profits and special benefits and unjust enrichment they have obtained as a result of their

unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common

stock sale proceeds, and imposing a constructive trust thereon;

      C.      Awarding punitive damages;

      D.      Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

      E.      Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.


Dated: January 25, 2024

Respectfully submitted,

**FARNAN LLP**

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Erica L. Stone
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: estone@rosenlegal.com

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
Email: bfarnan@farnanlaw.com
Email: mfarnan@farnanlaw.com

*Counsel for Plaintiff*